IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN BAUGH,<br><br>        Plaintiff,<br><br>v.<br><br>CUPRUM S.A. de C.V., LOUISVILLE LADDER, INC., f/k/a LOUISVILLE LADDER GROUP, LLC. AND VERZATEC, S.A.B. de C.V., AND IMSATEC, S.A.B. de C.V.<br><br>        Defendants. | NO.  08 CV 4204<br><br>Hon. David H. Coar |

### AMENDED MOTION TO APPOINT
### INTERNATIONAL SPECIAL PROCESS SERVER

Now comes the Plaintiff, John Baugh, by and through his attorney, Junie L. Sinson of Sinson & Sinson, Ltd., and states as follows:

1. On July 24, 2008, a Complaint at Law was filed in this matter against the Defendants, Cuprum, S.A. de C.V., Louisville Ladder, Inc. f/k/a Louisville Ladder Group, LLC, Verzatec, S.A.B. de C.V. and Imsatec, S.A.B. de C.V.

2. Three of the above listed Defendants, Cuprum, S.A. de C.V., Verzatec, S.A.B. de C.V. and Imsatec, S.A.B. de C.V. are corporations with their principal place of business in Mexico.

3. The Plaintiff is moving this Court to appoint and authorize service of process by APS International, Ltd., upon the above referenced corporate Defendants.

4. The Federal Rules of Civil Procedure, Rule 4, provides as follows:

    (a)    *For service on Corporations and Associations Rule 4(h)*

                      \*\*\*

> (h) Serving a <u>Corporation</u>, Partnership, or Association. Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served...
> (2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).
> (b) Service in a foreign country must be per the <u>Hague Convention</u>:
>
> ***
>
> (f) Serving an Individual <u>in a Foreign Country</u>. Unless federal law provides otherwise, an individual - - other than a minor, an incompetent person, or a person whose waiver has been filed - - may be served at a place not within any judicial district of the United States:
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the <u>Hague Convention</u> on the Service Abroad of Judicial and Extrajudicial Documents.
> (2) If there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>  (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>  (B) as the foreign authority directs in response to a <u>letter rogatory</u> or letter of request; or
>  (C) unless prohibited by the foreign country's law, by:
>   (i) delivering a copy of the summons and of the complaint to the individual personally; or
>   (ii) <u>using any form of mail</u> that the clerk addresses and sends to the individual and that requires a signed receipt; or
> (3) by other means not prohibited by international agreement, as the court orders.

5.  Plaintiff has commenced and is effectuating mail service upon each of the named Mexican Corporate Defendants by forwarding to them on July 25, 2008, by Express Mail International. The appropriate "notice documents", per tracking confirmation, were

SINSON & SINSON, LTD.
ATTORNEYS AT LAW
CHICAGO
WHEATON

received in Mexico on July 31, 2008.

6. Attached hereto as **EXHIBIT A** is a copy of the Hague Convention. The service referenced in paragraph 5, supra, is service pursuant to Article 10(a) which provides that said service is one of several ways of effectuating service on a foreign Mexican Corporate Defendant.

Article 10(a) provides:
*Article 10*
*Provided the State of destination does not object, the present Convention shall not interfere with a) the freedom to send judicial documents, by postal channels, directly to persons abroad.*

This method of service is sufficient for providing notice to a Defendant and requiring its participation in the litigation.

7. The Plaintiff may in the future seek the assistance of Mexican Courts in enforcing a judgment in this cause. The United States' State Department website states that service of process by "letters rogatory" is the exclusive method for effectuating a resulting enforceable judgment. Mexican Courts do not recognize service by international registered mail.

8. The additional way of effectuating service employing Letters Rogatory is addressed in Articles 2, 3, and 5 of the Hague Convention:

*CHAPTER 1 - JUDICIAL DOCUMENTS*
*Article 2*
*Each Contracting State shall designate a <u>Central Authority</u> which will undertake to receive requests for service coming from other Contracting States and to proceed in conformity with the provisions of Articles 3 to 6. Each State shall organise the Central Authority in conformity with its own law.*
*Article 3*
*The authority or judicial officer competent under the law of the State in which the documents originate shall forward to the Central Authority of the State addressed a request conforming to the model annexed to the present Convention, without any requirement of legalisation or other equivalent formality. The document to be served or a copy thereof shall be annexed to the request. The request and the document shall both be furnished in*

SINSON & SINSON, LTD.
ATTORNEYS AT LAW
CHICAGO
WHEATON

*duplicate.*

*Article 5*
*The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either -*
*a)   by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or*
*b)   by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed.*
*Subject to sub-paragraph (b) of the first paragraph of this Article, the document may always be served by delivery to an addressee who accepts it voluntarily. If the document is to be served under the first paragraph above, the Central Authority may require the document to be written in, or translated into, the official language or one of the official languages of the State addressed. That part of the request, in the form attached to the present Convention, which contains a summary of the document to be served, shall be served with the document.* (Alternative method)

As stated above, Articles 2 and 3, service outlined in this paragraph may be a necessary method for the enforcement of any Judgment obtained in this action in the Courts of Mexico.

9.   Although the Central Authority referenced in Articles 3 and 5 is always to be made available as a means to effectuate service, its use is not compulsory, and other methods of service, such as "letters rogatory," are provided elsewhere in the articles of the Convention, White v. Ratcliffe, 285 Ill.App.3d 758, 765, 674 N.E.2d 906 (2nd Dist. 1996), Ackerman v. Levine, 788 F.2d 830, 838, 838-839 (2nd Cir. 1986).

10.   To assist the Plaintiff in effectuating service on the Defendants, he has retained the services of APS International, Ltd. The assignment of APS International, Ltd. is to transmit to the Central Authority two sets, per defendant, of the following documents:

(a)   A Complaint translated into Spanish;

(b)   A certified Summons in which each set contains one raised seal of this Court;

SINSON & SINSON, LTD.
ATTORNEYS AT LAW
CHICAGO
WHEATON

    (c) A copy of the Order naming APS International, Ltd. as an authorized body to participate in the effectuating of service.

11. The Central Authority of Mexico has designated the Ministry of Foreign Affairs as the proper authority for receipt of International Rogatory Letters. Attached as **EXHIBIT B** is the document of the Ministry of Foreign Affairs outlining its participation in the process, per the Hague Convention.

12. The Ministry of Foreign Affairs is expected to forward the appropriate documents to the local Superior Court of Justice in Nuevo Leon. In the event that the documents are in order, including the Order sought by this Motion naming APS International Ltd as an appropriate process server to participate in the effectuating of service, the Mexican Court will deliver the documents to the Clerk of that Court who will effectuate service on each of the Defendants.

13. The balance of Article 10 states:

*Provided the State of destination does not object, the present Convention shall not interfere with...*
  (b) *the freedom of judicial officers or other competent persons of the State of Origin (<u>APS International, Ltd.</u>) to effect service of judicial documents directly through judicial officers or other competent persons, (<u>Central Authority</u>) of the State of destination. (identification added)*
  (c) *The freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through judicial officers, (<u>The Superior Court of Justice, Nuevo Leon</u>) officials, or other competent persons of the State of destination. (identification added)*

14. The Plaintiff has been advised by the Clerk of this Court that the electronic filing of Summons constitutes an original Summons and that the Clerk's office no longer routinely certifies a Summons or provides a raised seal Summons.

15. Counsel for the Plaintiff has been further advised that Mexican authorities at the Mexican Central Authority require a certified Summons with an appropriate raised seal.

SINSON & SINSON, LTD.
ATTORNEYS AT LAW
CHICAGO
WHEATON

**WHEREFORE**, the Plaintiff prays that an Order be entered:

(A) That APS International, Ltd., including its designated agents be appointed and authorized to effectuate service of process on the Defendants, Cuprum, S.A. de C.V., Verzatec, S.A.B. de C.V., and Imsatec, S.A.B. de C.V. in Mexico;

(B) That the Clerk of this Court be directed and authorized to provide a certified Summons with an appropriate raised seal as to each Defendant.

SINSON & SINSON, LTD.

/s/ Junie L. Sinson
Plaintiff by Junie L. Sinson

Junie L. Sinson
Sinson & Sinson, Ltd.
205 W. Wacker Drive
Suite 1600
Chicago, IL 60606
(312) 332-2107
and
330 Naperville Road
Suite 405
Wheaton, IL 60187
(630) 871-8360

Go to the Service Section

(In the relations between the Contracting States, this Convention replaces the first chapter of the Convention on civil procedure of 1 March 1954)

CONVENTION ON THE SERVICE ABROAD
OF JUDICIAL AND EXTRAJUDICIAL DOCUMENTS
IN CIVIL OR COMMERCIAL MATTERS

*(Concluded 15 November 1965)*
*(Entered into force 10 February 1969)*

The States signatory to the present Convention,
Desiring to create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time,
Desiring to improve the organisation of mutual judicial assistance for that purpose by simplifying and expediting the procedure,
Have resolved to conclude a Convention to this effect and have agreed upon the following provisions:

*Article 1*
The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad.
This Convention shall not apply where the address of the person to be served with the document is not known.

CHAPTER I – JUDICIAL DOCUMENTS
*Article 2*
Each Contracting State shall designate a Central Authority which will undertake to receive requests for service coming from other Contracting States and to proceed in conformity with the provisions of Articles 3 to 6.
Each State shall organise the Central Authority in conformity with its own law.

*Article 3*
The authority or judicial officer competent under the law of the State in which the documents originate shall forward to the Central Authority of the State addressed a request conforming to the model annexed to the present Convention, without any requirement of legalisation or other equivalent formality.
The document to be served or a copy thereof shall be annexed to the request. The request and the document shall both be furnished in duplicate.

*Article 4*
If the Central Authority considers that the request does not comply with the provisions of the present Convention

**EXHIBIT A**

it shall promptly inform the applicant and specify its objections to the request.

*Article 5*
The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either –
a) by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or
b) by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed.
Subject to sub-paragraph (b) of the first paragraph of this Article, the document may always be served by delivery to an addressee who accepts it voluntarily.
If the document is to be served under the first paragraph above, the Central Authority may require the document to be written in, or translated into, the official language or one of the official languages of the State addressed.
That part of the request, in the form attached to the present Convention, which contains a summary of the document to be served, shall be served with the document.

*Article 6*
The Central Authority of the State addressed or any authority which it may have designated for that purpose, shall complete a certificate in the form of the model annexed to the present Convention.
The certificate shall state that the document has been served and shall include the method, the place and the date of service and the person to whom the document was delivered. If the document has not been served, the certificate shall set out the reasons which have prevented service.
The applicant may require that a certificate not completed by a Central Authority or by a judicial authority shall be countersigned by one of these authorities.
The certificate shall be forwarded directly to the applicant.

*Article 7*
The standard terms in the model annexed to the present Convention shall in all cases be written either in French or in English. They may also be written in the official language, or in one of the official languages, of the State in which the documents originate.
The corresponding blanks shall be completed either in the language of the State addressed or in French or in English.

*Article 8*
Each Contracting State shall be free to effect service of judicial documents upon persons abroad, without application of any compulsion, directly through its diplomatic or consular agents.
Any State may declare that it is opposed to such service within its territory, unless the document is to be served upon a national of the State in which the documents originate.

*Article 9*
Each Contracting State shall be free, in addition, to use consular channels to forward documents, for the purpose of service, to those authorities of another Contracting State which are designated by the latter for this purpose.
Each Contracting State may, if exceptional circumstances so require, use diplomatic channels for the same purpose.

*Article 10*
Provided the State of destination does not object, the present Convention shall not interfere with –
a) the freedom to send judicial documents, by postal channels, directly to persons abroad,
b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of

judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,
c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

*Article 11*
The present Convention shall not prevent two or more Contracting States from agreeing to permit, for the purpose of service of judicial documents, channels of transmission other than those provided for in the preceding Articles and, in particular, direct communication between their respective authorities.

*Article 12*
The service of judicial documents coming from a Contracting State shall not give rise to any payment or reimbursement of taxes or costs for the services rendered by the State addressed.
The applicant shall pay or reimburse the costs occasioned by-
a) the employment of a judicial officer or of a person competent under the law of the State of destination,
b) the use of a particular method of service.

*Article 13*
Where a request for service complies with the terms of the present Convention, the State addressed may refuse to comply therewith only if it deems that compliance would infringe its sovereignty or security.
It may not refuse to comply solely on the ground that, under its internal law, it claims exclusive jurisdiction over the subject-matter of the action or that its internal law would not permit the action upon which the application is based.
The Central Authority shall, in case of refusal, promptly inform the applicant and state the reasons for the refusal.

*Article 14*
Difficulties which may arise in connection with the transmission of judicial documents for service shall be settled through diplomatic channels.

*Article 15*
Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and the defendant has not appeared, judgment shall not be given until it is established that –
a) the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory, or
b) the document was actually delivered to the defendant or to his residence by another method provided for by this Convention,
and that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend.
Each Contracting State shall be free to declare that the judge, notwithstanding the provisions of the first paragraph of this Article, may give judgment even if no certificate of service or delivery has been received, if all the following conditions are fulfilled-
a) the document was transmitted by one of the methods provided for in this Convention,
b) a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,
c) no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.
Notwithstanding the provisions of the preceding paragraphs the judge may order, in case of urgency, any provisional or protective measures.

*Article 16*
When a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and a judgment has been entered against a defendant who has not appeared, the judge shall have the power to relieve the defendant from the effects of the expiration of the time for appeal from the judgment if the following conditions are fulfilled –
a) the defendant, without any fault on his part, did not have knowledge of the document in sufficient time to defend, or knowledge of the judgment in sufficient time to appeal, and
b) the defendant has disclosed a *prima facie* defence to the action on the merits.
An application for relief may be filed only within a reasonable time after the defendant has knowledge of the judgment.
Each Contracting State may declare that the application will not be entertained if it is filed after the expiration of a time to be stated in the declaration, but which shall in no case be less than one year following the date of the judgment.
This Article shall not apply to judgments concerning status or capacity of persons.

CHAPTER II – EXTRAJUDICIAL DOCUMENTS
*Article 17*
Extrajudicial documents emanating from authorities and judicial officers of a Contracting State may be transmitted for the purpose of service in another Contracting State by the methods and under the provisions of the present Convention.

CHAPTER III – GENERAL CLAUSES
*Article 18*
Each Contracting State may designate other authorities in addition to the Central Authority and shall determine the extent of their competence.
The applicant shall, however, in all cases, have the right to address a request directly to the Central Authority.
Federal States shall be free to designate more than one Central Authority.

*Article 19*
To the extent that the internal law of a Contracting State permits methods of transmission, other than those provided for in the preceding Articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions.

*Article 20*
The present Convention shall not prevent an agreement between any two or more Contracting States to dispense with –
a) the necessity for duplicate copies of transmitted documents as required by the second paragraph of Article 3,
b) the language requirements of the third paragraph of Article 5 and Article 7,
c) the provisions of the fourth paragraph of Article 5,
d) the provisions of the second paragraph of Article 12.

*Article 21*
Each Contracting State shall, at the time of the deposit of its instrument of ratification or accession, or at a later date, inform the Ministry of Foreign Affairs of the Netherlands of the following –
a) the designation of authorities, pursuant to Articles 2 and 18,
b) the designation of the authority competent to complete the certificate pursuant to Article 6,
c) the designation of the authority competent to receive documents transmitted by consular channels, pursuant to Article 9.

Each Contracting State shall similarly inform the Ministry, where appropriate, of –
*a)* opposition to the use of methods of transmission pursuant to Articles 8 and 10,
*b)* declarations pursuant to the second paragraph of Article 15 and the third paragraph of Article 16,
*c)* all modifications of the above designations, oppositions and declarations.

*Article 22*
Where Parties to the present Convention are also Parties to one or both of the Conventions on civil procedure signed at The Hague on 17th July 1905, and on 1st March 1954, this Convention shall replace as between them Articles 1 to 7 of the earlier Conventions.

*Article 23*
The present Convention shall not affect the application of Article 23 of the Convention on civil procedure signed at The Hague on 17th July 1905, or of Article 24 of the Convention on civil procedure signed at The Hague on 1st March 1954.
These Articles shall, however, apply only if methods of communication, identical to those provided for in these Conventions, are used.

*Article 24*
Supplementary agreements between Parties to the Conventions of 1905 and 1954 shall be considered as equally applicable to the present Convention, unless the Parties have otherwise agreed.

*Article 25*
Without prejudice to the provisions of Articles 22 and 24, the present Convention shall not derogate from Conventions containing provisions on the matters governed by this Convention to which the Contracting States are, or shall become, Parties.

*Article 26*
The present Convention shall be open for signature by the States represented at the Tenth Session of the Hague Conference on Private International Law.
It shall be ratified, and the instruments of ratification shall be deposited with the Ministry of Foreign Affairs of the Netherlands.

*Article 27*
The present Convention shall enter into force on the sixtieth day after the deposit of the third instrument of ratification referred to in the second paragraph of Article 26.
The Convention shall enter into force for each signatory State which ratifies subsequently on the sixtieth day after the deposit of its instrument of ratification.

*Article 28*
Any State not represented at the Tenth Session of the Hague Conference on Private International Law may accede to the present Convention after it has entered into force in accordance with the first paragraph of Article 27. The instrument of accession shall be deposited with the Ministry of Foreign Affairs of the Netherlands.
The Convention shall enter into force for such a State in the absence of any objection from a State, which has ratified the Convention before such deposit, notified to the Ministry of Foreign Affairs of the Netherlands within a period of six months after the date on which the said Ministry has notified it of such accession.
In the absence of any such objection, the Convention shall enter into force for the acceding State on the first day of the month following the expiration of the last of the periods referred to in the preceding paragraph.

*Article 29*

Any State may, at the time of signature, ratification or accession, declare that the present Convention shall extend to all the territories for the international relations of which it is responsible, or to one or more of them. Such a declaration shall take effect on the date of entry into force of the Convention for the State concerned.

At any time thereafter, such extensions shall be notified to the Ministry of Foreign Affairs of the Netherlands. The Convention shall enter into force for the territories mentioned in such an extension on the sixtieth day after the notification referred to in the preceding paragraph.

*Article 30*

The present Convention shall remain in force for five years from the date of its entry into force in accordance with the first paragraph of Article 27, even for States which have ratified it or acceded to it subsequently.

If there has been no denunciation, it shall be renewed tacitly every five years.

Any denunciation shall be notified to the Ministry of Foreign Affairs of the Netherlands at least six months before the end of the five year period.

It may be limited to certain of the territories to which the Convention applies.

The denunciation shall have effect only as regards the State which has notified it. The Convention shall remain in force for the other Contracting States.

*Article 31*

The Ministry of Foreign Affairs of the Netherlands shall give notice to the States referred to in Article 26, and to the States which have acceded in accordance with Article 28, of the following –

*a)* the signatures and ratifications referred to in Article 26;
*b)* the date on which the present Convention enters into force in accordance with the first paragraph of Article 27;
*c)* the accessions referred to in Article 28 and the dates on which they take effect;
*d)* the extensions referred to in Article 29 and the dates on which they take effect;
*e)* the designations, oppositions and declarations referred to in Article 21;
*f)* the denunciations referred to in the third paragraph of Article 30.

In witness whereof the undersigned, being duly authorised thereto, have signed the present Convention.

Done at The Hague, on the 15th day of November, 1965, in the English and French languages, both texts being equally authentic, in a single copy which shall be deposited in the archives of the Government of the Netherlands, and of which a certified copy shall be sent, through the diplomatic channel, to each of the States represented at the Tenth Session of the Hague Conference on Private International Law.

N.B. On 25 October 1980 the Fourteenth Session adopted a Recommendation *on information to accompany judicial and extrajudicial documents to be sent or served abroad in civil or commercial matters (Actes et documents de la Quatorzième session (1980)*, Tome I, *Matières diverses*, p. I-67; idem, Tome IV, *Entraide judiciaire*, p. 339; *Practical Handbook on the Operation of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters).*

ANNEX TO THE CONVENTION

Active Model Forms (Request, Certificate, Summary)





General Direction for Legal Affairs

**INTERNATIONAL ROGATORY LETTERS**

- What is an international rogatory letter?
- Requirements for rogatory letters
- Track rogatory letters on the internet

This information was valid on January 1, 2001. For comments and suggestions, email dgajuridicos@sre.gob.mx

### What is an international rogatory letter?

The rogatory letter is a procedure by which one court calls upon another court in a foreign country for help in obtaining information or for a civil process or investigation which it cannot undertake because it does not have jurisdiction. The tasks requested could be a notification regarding legal documents or a citation, etc. The use of rogatory letters is based on international treaties or conventions that permit them or, lacking this basis, on international reciprocity.

Therefore, a rogatory letter is defined as a communication from a judicial authority in one country to a judicial authority in another country, requesting assistance in certain tasks that are needed as part of an ongoing procedure in the first country, as specified in international treaties to which both countries are party or, in the absence of a treaty, base don the principle of reciprocity.

Top

### Requirements

| REQUIREMENTS FOR ROGATORY LETTERS |
|---|
| 1. Present the rogatory letter issued by a Mexican legal authority and duly legalized or with the correct seal. The document should state clearly the task that is needed, and should name the individual involved, his or her address (street, number, county or town, zip code and city, country). |
| 2. Present the documents that are meant for the defendant or the documents that give rise to the task that is requested in the rogatory letter. |
| 3. Present the rogatory letter with all of its annexes, duly translated into the official language of the country where the rogatory letter will take effect, by an official translator authorized by the Supreme Court |

IMPORTANT NOTE:
The only actions that are dealt with via rogatory letter are procedural ones such as notifications, citations, etc.
Any actions requiring COACTIVE IMPLEMENTATION must be arranged directly by the interested individual with the competent foreign authority.

### WHO SHOULD LEGALIZE THE ROGATORY LETTERS?

A) Rogatory letters issued by legal authorities in the Federal District

1. By the government of the Federal District via the General Dorection for Legal Affaire and Legislative Studies, Underdirection for Opinions and Contracts (Candelaria de los Patos S/N, Colonia Diez de Mayo, C.P. 15290, Delegación Venustiano Carranza, D.F.).
2. By the Ministry of the Interior (SEGOB) via the General Direction for the Interior, Direction for Political Coordination, Underdirection for Formalization and Control (Abraham González No.48 P.B., Colonia Juárez, C.P. 06600, D.F.).

**EXHIBIT B**

3. By the Foreign Ministry's passport offices in the various delegations.
4. By the consular section of the Mexican embassy in the country where the rogatory letter will take effect.

*B) Rogatory letters issued by judicial authorities outside of the federal district.*

1. By the Secretary of State of the place where the rogatory letter is issued.
2. By the authorities listed in numbers 2-4 of A) above.

See the end note.

### WHO CAN PROVIDE THE SEAL (APOSTILLE) FOR THE ROGATORY LETTER?

1. For rogatory letters issued by legal authorities in the Federal District, by the government of the federal district through its General Direction for Legal Affairs and Legislative Studies, Underdirection for Consultation and Contracts.

2. For rogatory letters issued by authorities in the rest of Mexico, by the Secretary of State of the place where the document was issued.

IMPORTANT NOTE:

In accordance to the Hague Convention on the Legalization of Foreign Documents, only those rogatory letters that will take effect in countries that are party to the Convention (see list) receive the apostille. In countries that are not party to the Convention, the corresponding legalizations must be processed with the authorities mentioned above.

END NOTE

The rogatory letters issued by federal judges must be legalized by the authorities mentioned in the corresponding paragraph, with the exception of the government of the Federal District and of the Secretary of State of the entity. Apostilles for these documents will only be given by the Secretary of State.

| LIST OF COUNTRIES THAT ARE PARTY TO THE HAGUE CONVENTION ON THE LEGALIZATION OF FOREIGN PUBLIC DOCUMENTS | | |
|---|---|---|
| Antigua and Barbuda | Argentina | Armenia |
| Australia | Austria | Bahamas |
| Barbados | Belgium | Belize |
| Belarus | Bosnia and Herzegovina | Botswana |
| Brunei | Colombia | Croatia |
| Cyprus | Darussalam | El Salvador |
| Fiji | Finland | Former Republic of Yugoslavia |
| France | Germany | Hong Kong |
| Hungary | Israel | Italy |
| Japan | Lesotho | Latvia |
| Liberia | Liechtenstein | Lithuania |
| Lesotho | Latvia | Liberia |
| Luxembourg | Malawi | Marshall Islands |
| Mauritius | Mexico | Moldova |
| Nieu | Norway | Netherlands |
| Panama | Portugal | Russian Federation |
| Saint Kitts and Nevis | San Marino | Seychelles |
| Slovenia | South Africa | Spain |
| Surinam | Swaziland | Sweden |
| Switzerland | Tonga | Trinidad and Tobago |
| Turkey | United States and Puerto Rico | Venezuela |

SRE　Secretaría de Relaciones Exteriores　Plaza Juárez #20, Colonia Centro, Deleg. Cuauhtémoc, C.P. 06010, México, D.F. Tel. 3686-5100

p://www.sre.gob.mx/english/services/rogatoryletters.htm　　　　7/7/2008