**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOHN BAUGH, by and through his Wife and Next Friend, SHARON BAUGH, )<br>)<br>) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 08 C 4204 |
| ) | |
| CUPRUM S.A. de C.V., LOUISVILLE LADDER, INC. f/k/a LOUISVILLE LADDER GROUP, LLC, VERZATEC, S.A.B. de C.V., and IMSATEC, S.A.B. de C.V., )<br>)<br>)<br>)<br>) | Judge Rebecca R. Pallmeyer |
| ) | |
| Defendant. ) | |

**MEMORANDUM ORDER**

Plaintiff John Baugh fell from a ladder on August 1, 2006, and suffered severe brain injuries. In this lawsuit, Baugh and his wife Sharon Baugh sued Defendant ladder manufacturer Cuprum S.A. de C.V. (the "Defendant"),[1] alleging that defects in the ladder were responsible for his injuries. The jury returned a verdict in favor of Defendant. Plaintiff now moves pursuant to FED. R. CIV. P. Rules 50(b) and 59(a)(1)(A) for a new trial. Plaintiff argues that the court erred in granting the jury's request for access to a demonstrative exhibit—an exemplar of the ladder at issue—during their deliberations. For the reasons presented here, the motion is denied.

**BACKGROUND**

Plaintiff John Baugh sustained severe head injuries in an accident on August 1, 2006. There were no eyewitnesses to the accident and tragically, Plaintiff Baugh is unable to testify coherently about the incident. Instead, Plaintiff offered circumstantial evidence, including Mr. Baugh's stated intention to clean the gutters on his garage; the position in which he was found, seated on his driveway, holding a screwdriver; and the fact that the ladder was found lying near him

---

[1] Prior to trial, Plaintiff voluntarily dismissed the claims against Defendants Louisville Ladder, Inc., Verzatec, S.A.B. de C.V., and Imsatec, S.A.B. de C.V. after the court denied Plaintiff's motion to bifurcate trial. (Minute Order [249].)

on the driveway, on one side, with a bent metal leg. Plaintiff's theory, supported by this evidence and by expert testimony, was that Mr. Baugh, known to be a careful man, climbed on the ladder to clean his gutters and that the ladder's frame suddenly bent and failed under ordinary use. Plaintiff believes the fact that the metal ladder was found on its right side, with its leg bent upward, is powerful evidence in support of this theory.

Defendant countered this with evidence that the ladder in question met all relevant industry standards. Indeed, Sharon Baugh herself testified that she had used the ladder a handful of times prior to the accident. She had no trouble using it, did not find it wobbly or unstable, and had no safety concerns. Defendant also offered expert testimony that illustrated how the accident could have happened in the absence of any defect in the ladder. Specifically, Defendant suggested the ladder Mr. Baugh chose to use was a bit too short to enable him to reach the gutter comfortably, and that damage to the ladder was consistent with the possibility that Mr. Baugh had put his weight on the paint shelf, rendering the ladder unstable and resulting in its collapse. Defendant illustrated this theory with a videotape demonstration, and it appealed well to common sense.

The jury heard evidence for two weeks. Soon after beginning their deliberations on March 7, 2011, they asked to have access to a demonstrative exhibit, which had not initially been sent back to the jury room. Specifically, they wanted to see and inspect an exemplar of the ladder in question, which had been shown to them during the trial and had been used to illustrate certain testimony. The court was initially reluctant to permit this; demonstrative exhibits—which often consist of maps, drawings, or charts—are not ordinarily sent back with other exhibits. More importantly, the court was concerned that one of the jurors might climb improperly and injure him/herself. Plaintiff objected to the jurors' having any access to the ladder; counsel argued that the existence of the exemplar ladder was a surprise, and that any use by the jury would be

inconsistent with Judge Coar's pretrial rulings prohibiting any "reconstruction" of the accident.[2] The jurors repeated their request, however, and the court ultimately overruled the objection and permitted them to examine the ladder in deliberations. A defense verdict swiftly followed.

## DISCUSSION

Plaintiff's post-trial motion challenges the court's rulings on the exemplar ladder for all the same reasons addressed on the record during jury deliberations. Specifically, Plaintiff contends that the exemplar ladder should not have been used at all because Defendant failed to disclose its existence in a timely fashion. The error was compounded, Plaintiff urges, when the jurors were permitted to touch and climb on the exemplar ladder during their deliberations. Plaintiff reiterates that "reconstruction" of the accident was improper and notes that, although the court instructed the jurors not to attempt to reconstruct the accident, the court did not define that term.

**I.     Untimely Disclosure**

The untimely notice objection requires little discussion. Defense counsel satisfied the court that exemplar ladders had in fact been available for Plaintiff's counsel to review well in advance of the trial. Plaintiff notes that the existence of the exemplar was not disclosed during two pretrial conferences conducted by Judge Coar. It did, however, appear in a list of Defendant's exhibits produced no later than December 2010, and Defendant furnished Plaintiff's counsel with photographs of the exhibit. More importantly, it is undisputed that the ladder was available for counsel's inspection on the day prior to, and during, the discovery deposition of Defendant's expert Michael Van Bree. That deposition occurred well prior to trial.

"The decision whether to allow use of demonstrative exhibits is discretionary" with the court. *Wipf v. Kowalski*, 519 F.3d 380, 387 (7th Cir. 2008); *see also Keach v. U.S. Trust Co.*, 419 F.3d 626, 640 (7th Cir. 2005) ("The decision to admit previously undisclosed testimony is entrusted to

---

[2] Judge David Coar, to whom this case was originally assigned, has retired from the bench, and the case was reassigned for trial late in 2010.

the broad discretion of the district court."). In exercising that discretion, the Seventh Circuit has explained, the district court should consider "'(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date.'" *Keach*, 419 F.3d at 640 (quoting *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)). None of these factors counseled in favor of exclusion of the exemplar ladder, and none suggest that a new trial is appropriate now. Plaintiff has not suggested that Defendant's failure to disclose the exemplar earlier was a product of bad faith and has not identified any fashion in which its use disrupted the trial. Counsel does insist he was surprised by the ladder, but that surprise predated the trial by at least several weeks. As addressed below, Plaintiff has not explained how he was prejudiced by the jury's consideration of a ladder identical to the one he argues was defective. And any prejudice was readily curable, as the ladder was available for inspection by counsel and testing by his expert(s) on request.

The court concludes that Plaintiff's counsel was aware, well before the trial, of the existence of the exemplar ladder. Had counsel requested access to the exemplar for inspection by his own expert or for testing, the court certainly would have granted such a request. Notably, Plaintiff's own expert freely acknowledged he had not tested his metal failure theory on any ladder prior to offering his expert opinion, and saw no need for testing; the court is left to suspect that appropriate testing would have defeated that theory. In any event, there is no basis on which the court can conclude Plaintiff was denied the right to examine or test the exemplar.

**II.     Absence of Prejudice**

Notably, Plaintiff does not contend that construction or design of the exemplar ladder differed in any way from the one on which John Baugh was injured. At the time counsel argued his objection to the jury's request, the court noted that in light of Plaintiff's theory—that the ladder was constructed in such a way, and of such materials, as to be unsafe in ordinary use—the court would

4

have assumed Plaintiff would welcome the jurors' interest in inspecting and perhaps even testing the exemplar. If the nature of the "ordinary use" that led to ladder failure could somehow have been misleadingly concealed from the jurors during their inspection, Plaintiff did not so argue. Instead, counsel expressed concern about the jurors' "playing" with the ladder—though nothing about their request suggested that the jurors, who had devoted several days to hearing the evidence, had any such frivolous intentions. After the court was satisfied that the ladder had in fact been available to counsel prior to trial, the court pressed counsel repeatedly for an explanation of how the jurors' inspection of the ladder would prejudice his case. In response, Plaintiff offered nothing but speculation. Counsel did suggest vaguely that he might have selected different jurors, had he understood that the jurors would have access to the ladder during deliberations. He did not explain, however, how an individual's desire to have as much information as possible concerning the ladder on which Mr. Baugh was injured would somehow have rendered that individual a less desirable juror.

### III.     "Reconstruction" Instruction

Plaintiff now emphasizes Judge Coar's pretrial ruling prohibiting any "reconstruction" of the accident, and this court's assurances that it would continue to honor all of Judge Coar's pretrial rulings. As the court understands the "reconstruction" concern, however, Judge Coar prohibited any expert testimony that would reconstruct the incident in a manner inconsistent with eyewitness reports of the positions in which Mr. Baugh and his ladder were found on the morning of the accident.[3] This court's own "reconstruction" concern was much more straightforward: for obvious reasons, the court was unwilling for any juror to engage in activity that might result in a fall or an

---

[3] Defense counsel casts doubt on the confidence that should be placed in this eyewitness testimony. Counsel points out that the three witnesses who provided the information were not interviewed until some nine months after the accident, and that their sworn statements were drafted by Plaintiff's counsel. This court nevertheless saw no reason to revisit Judge Coar's rulings on this issue and declines to do so now.

injury. Thus, in response to Plaintiff's complaint that the jurors might attempt to "reconstruct" the accident if they were allowed to step on the ladder, the court invited counsel to draft an instruction. Counsel did so, and when the court permitted the jurors to have access to the ladder, the court gave the following instruction, proposed by Plaintiff: "Pursuant to your request, I am allowing the exemplar ladder to be taken into the jury room. You may fully examine the ladder. Under no circumstances are you to endeavor to reconstruct the occurrence."

Plaintiff now argues that the court erred in failing to define the term "reconstruction" for the jurors. But this failure appears to be one of counsel's own making; it was Plaintiff's attorney who proposed an instruction on this issue, and the court would have entertained any definitional language he had proposed. Plaintiff's objection to the instruction that counsel himself drafted is overruled.

## IV.    Juror Testing

Finally, Plaintiff argues that the court erred by allowing the ladder to be taken in to the jury room at all. "The taking of exhibits by the jury to their room is a matter primarily within the sound discretion of the court." *United States v. Medina*, 552 F.2d 181, 192 (7th Cir. 1977) (quoting *United States v. Gross*, 451 F.2d 1355, 1359 (7th Cir. 1971)). Plaintiff acknowledges that the matter lies within the court's discretion but argues that juror testing of the ladder, or reconstruction of the incident, is so improper that the court abused its discretion by opening the door to that possibility.

Of those courts that have addressed this issue, the substantial majority find no impropriety in juror access to exhibits. Indeed, many courts specifically consider the possibility of juror testing of exhibits, or attempted recreation of an incident, and find no basis for criticism of such activity. In *Walton v. Keith*, a petition for habeas corpus relief, the prosecutor went so far as to invite the jurors to conduct an experiment. No. CIV-09-281-F, 2010 WL 354131, at *18 (W.D. Okla. Jan. 27, 2010), *cert. of appealability denied*, 416 F. App'x 740 (10th Cir. Mar. 22, 2011). He suggested the jurors arrange themselves on chairs as they might be seated in a vehicle, in order to assess the

credibility of testimony from a police officer concerning his observations of passengers in the vehicle in which the petitioner was arrested. *Id.* The court rejected petitioner's objection: "'There is simply no constitutional command preventing a jury from using common sense and ordinary and uninflammatory props to reenact a crime in the privacy of the jury room.'" *Id.* (quoting *United States. v. Abeyta*, 27 F.3d 470, 477 (10th Cir.1994)) (citing *United States v. Hephner*, 410 F.2d 930, 936 (7th Cir.1969)).

*United States v. Hephner*, the Seventh Circuit case cited in *Walton,* was a criminal case involving a bank robber who covered his head and wore sunglasses while committing the act. 410 F.2d 930, 932 (7th Cir. 1969). In the jury room, one of the jurors covered his head and donned sunglasses so that the jury could determine whether identification was possible. The Seventh Circuit characterized this as a simple experiment that had no prejudicial effect. *Id.* at 936. "Jurors must be given enough latitude in their deliberations to permit them to use common experiences and illustrations in reaching their verdict." *Id.*; *see also Fletcher v. McKee,* 355 F. App'x 935, 935-36, 939-40 (6th Cir. 2009) (no habeas relief where jurors conducted an experiment to determine where a gun would have fallen had the victim's gunshot wound been self-inflicted, as defendant argued); *Sturdivant v. Barkley,* No. 04-CV-5659 (DLI), 2007 WL 2126093, at *9 (E.D. N.Y. July 24, 2007) (no habeas relief where jurors compared the color of a blue plastic bag in the trash can to the color of bags of cocaine in evidence, as jurors are free to "use their common experience and illustrations in reaching a verdict"); *Simon v. Kuhlman*, 549 F. Supp. 1202, 1205-08 (S.D.N.Y. 1982) (no habeas relief where a juror placed a nylon stocking over his head to enable other jurors to determine whether identification was possible; "where the jurors . . . merely observe an experiment in the jury room 'testing' certain of the record evidence, their verdict is not constitutionally defective").

In *Kurina v. Thieret*, petitioner had been convicted of murdering the victim with a knife. 853 F.2d 1409, 1410 (7th Cir. 1988). At trial, petitioner, who was left-handed, had argued that the knife wounds could only have been inflicted by a right-handed person. *Id.* at 1411. In deliberation, the

jury constructed a cardboard knife to test this assertion. *Id.* at 1413. In affirming denial of his habeas petition, the Seventh Circuit cited *Hephner* and ruled that a jury experiment based on evidence in the trial record was not improper. *Id.* at 1414. Courts have reached the same conclusion in civil actions, as well. *See*, *e.g.*, *Banghart v. Origoverken, A.B.*, 49 F.3d 1302, 1306-07 (8th Cir. 1995) (during deliberation on a claim of injuries arising from the explosion of an alcohol stove, jurors conducted an experiment, lighting matches and dropping them into the stove; court concluded the experiment was not improper and did not constitute "extraneous evidence"); *Rapine v. Harrah's Atl. City*, No. CIV.A. 204CV00590LLD, 2006 WL 724548, at *3 (E.D. Pa. Mar. 21, 2006) (same result where jurors were permitted to inspect a bench from which plaintiff had fallen). In short, juror inspection, manipulation, and even "testing" of evidence may be unusual, but it is not unprecedented and, more importantly, does not appear to be improper.

Plaintiff in this case nevertheless see particular mischief in the jurors' activities. Without seeking leave of court, Plaintiff's counsel contacted the jurors following return of the verdict and attempted to interview them about the possibility that they had indeed engaged in an exercise of "reconstruction." In support of his motion for a new trial, Plaintiff has produced the affidavit of Juror Willie Artley, who reported that five jurors had climbed the exemplar ladder. Artley determined that the ladder was "strong and stable" even when he reached out from it, and concluded "that the occurrence was the result of the ladder tipping due to John Baugh's misuse." (Artley Aff., Ex. I to Def.'s Answer to Pl.'s Mot. for a New Trial [306].)

Defendant objects to consideration of this information, citing Federal Rule of Evidence 606(b). That Rule provides that "[d]uring an inquiry into the validity of a verdict or indictment, a juror may not testify about any . . . incident that occurred during the jury's deliberations" and that the court "may not receive a juror's affidavit or evidence of a juror's statement on these matters." FED. R. EVID. 606(b)(1). The Rule codifies the firmly recognized principle prohibiting "the admission of juror testimony to impeach a jury verdict." *Tanner v. United States*, 483 U.S. 107, 117 (1987).

Plaintiff argues that his investigation falls into an exception permitting testimony on the issue of whether "extraneous prejudicial information was improperly brought to the jury's attention." FED. R. EVID. 606(b)(2)(A). Plaintiff cites *Mattox v. United States*, for the proposition that jurors may offer evidence that impeach their verdicts "in the interest of justice." 146 U.S. 140, 147 (1892). *Mattox* was a capital case where the bailiff made prejudicial comments about the defendant in the jurors' presence and during their deliberations, and the jurors had access during their deliberations to a prejudicial newspaper article. *Id.* at 142-43. Thus, in *Mattox*, non-jurors asserted influence over the deliberation process, a matter that would fall into an exception now codified in Rule 606. *See* FED. R. EVID. 606(b)(2)(B) ("A juror may testify about whether . . . an outside influence was improperly brought to bear on any juror . . . . ")

      This court is not persuaded that the exception is available in this case. There has never been any suggestion that the jurors considered any "extraneous" information. Plaintiff's counsel well knew that the jurors wanted access to the exemplar ladder that had stood in the courtroom during portions of the trial. In any event, even if the court were to consider evidence of the jurors' activities, for the reasons described above, nothing about those activities suggests that a new trial is warranted.

**CONCLUSION**

Plaintiff's motion for a new trial [300] is denied.

ENTER:

Dated: March 27, 2012

_____
REBECCA R. PALLMEYER
United States District Judge